**F I L E D**

AUG 2 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

HEARTBILT HOMES, INC., an Illinois )
corporation, )
)
               Plaintiff, )
)
       vs. )
)
MICHAEL SCHLICHTING, )
)
             Defendant. )

NO.  08 C 50187

JUDGE KAPALA

Magistrate Judge P. Michael Mahoney

**COMPLAINT**

      Plaintiff HEARTBILT HOMES, INC., an Illinois corporation ("Heartbilt"), by and through its attorneys, Marc C. Gravino and John J. Holevas of WilliamsMcCarthy, LLP, state and allege as follows for its Complaint against defendant MICHAEL SCHLICHTING ("Schlichting"):

I. Jurisdiction and Venue

      1.     This action arises under the Computer Fraud and Abuse Act, 18 U.S.C., §1030, *et seq.* Accordingly, jurisdiction is founded based on said federal act (the "Act").

      2.     All parties reside within the Northern District of Illinois, Western Division, and thus venue is appropriate in the United States District for the Northern District of Illinois, Western Division. Venue is conferred by 28 U.S.C., §1392(b)(2).

II. Parties

      3.     Plaintiff Heartbilt is and was at all times relevant an Illinois corporation doing business in numerous states, including the State of Illinois, with its principal place of business at 941 East North Avenue in the City of Stockton, County of Jo Daviess, State of Illinois.

4.     Defendant Schlichting is and was at all times relevant a citizen of the State of Illinois who engaged in acts complained of below in the County of Jo Daviess, State of Illinois all of which occurred within this judicial district and division.

### III.  Background

5.     Schlichting was previously employed by Heartbilt from February 4, 2002 to February 10, 2006.

6.     At or about the time he became employed with Heartbilt, Schlichting signed an employment agreement, an unsigned copy of which is attached hereto as Exhibit A, where the employee acknowledged various trade secrets, knowledge of financial information, customer lists, sales contracts and sales leads are the property of HEARTBILT HOMES, and that the employee would have no claim thereto and would not use any of this information to Heartbilt's disadvantage.

7.     A signed copy of Schlichting's employment agreement was destroyed in an August 24, 2005 fire that consumed the majority of the Heartbilt buildings and properties.

8.     On February 10, 2006, Schlichting tendered his written resignation to Heartbilt.

9.     During the course of his employment with Heartbilt, Schlichting was provided with, and agreed to be bound by, Heartbilt's Electronic Access and Acceptable Use policy, an exemplary copy of which is attached hereto as Exhibit B.

10.     During his employment with Heartbilt, Schlichting created his own password which allowed him access to Heartbilt's computer system network for limited authorized use during his employment at Heartbilt.

11.    At all times relevant thereto, there has been in full force and effect a federal statute known as the Computer Fraud and Abuse Act, 18 U.S.C., §1030, *et seq.* which contains, in pertinent, the following provisions:

> Section 1030(a)(5)(B)(i) applies the Act to:
>
> "loss to 1 or more persons during any 1 year period . . . aggregating at least $5,000 in value."
>
> Section 1030(a)(5)(A) applies the Act to the following individuals:
>
> "Whoever -- knowingly causes the transmission of a program, information, code or command, and as a res ult of such conduct, intentionally causes damage without authorization, to a protected computer; intentionally accesses a protected computer without authorizati on, and as a result of such conduct, recklessly causes damage; or intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage."
>
> Section 1030(e)(11) defines the term loss to mean:
>
> "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

12.    From at least January 30, 2006 until his resignation from Heartbilt, and on information and belief prior to said dated, Schlichting was provided for use as a Heartbilt employee, and pursuant to limited authorization as alleged in paragraph 10,  a Dell Optiplex 170L desktop computer identified as "Sales Number 1" computer.  Said computer was labeled with service tag H7G81, and express code 37457434033.  This computer is hereinafter referred to as the Dell computer.

13.    The Dell computer was physically located in Heartbilt's sales center located at 941 East North Avenue in Stockton, Illinois from at least January 30, 2006 until February 10, 2006.

14.    On January 31, 2006, Schlichting selected and placed as many as 15 business-related Heartbilt files or folders from the Dell computer into the recycle bin at around 10:49 a.m.

15.    On or after January 30, 2006 but prior to February 11, 2006, Schlichting caused the contents of the files or file folders referenced above, or a portion of said file folders, be transmitted either electronically or in paper form to another location and/or media.

16.    On January 31, 2006, Schlichting caused to be emptied from the recycle bin from the Dell computer the 15 or more business-related Heartbilt files previously deleted at or around 9:40 a.m. from the Dell computer prior to logging off said computer at or about 5:13 p.m.

17.    That on or about January 30, 2006, Schlichting caused the contents of the file folders referred to in paragraph 16, or a portion of said file or folders to be transferred or transmitted in either electronic or paper form to another location and/or media.

18.    That on February 3, 2006, Schlichting caused to be placed into the recycle bin of the Dell computer as many as 47 business-related Heartbilt files or folders at or before 4:03 p.m.

19.    That on or after February 3, 2006, Schlichting caused the contents of the file or folders referenced in paragraph 18, or a portion of said file or folders to be transferred or transmitted in either electronic or paper form to another location and/or media.

20.    That from January 30, 2006 until Schlichting's resignation from Heartbilt on February 10, 2006, he deleted and caused to be placed in the recycle bin of the Dell computer as many as 62 business-related Heartbilt files.

21.    That on or after January 30, 2006, but prior to February 11, 2006, Schlichting caused the contents of the file or folders referenced in paragraph 20, or a portion of said file or folders, to be transferred or transmitted in either electronic or paper form to another location and/or media.

22.    That on or after January 30, 2006, but prior to February 11, 2006, Schlichting caused to be emptied from the recycle bin of the Dell computer the 62 business-related Heartbilt files referenced in paragraph 20.

23.    That on January 30, 2006 at 9:18 a.m., Schlichting took steps to eliminate files or folders containing logs of Internet usage history from the Dell computer.

24.    That on or after January 30, 2006, Schlichting caused the contents of the file or folders referenced in the above paragraph 23, or a portion of said file or folders, to be transferred or transmitted in either electronic or paper form to another location and/or media.

25.    That on February 3, 2006, Schlichting deleted a folder named "Misc" which resided on the Dell computer at the filepath "C:\Misc".

26.    That on or after February 3, 2006, but prior to February 11, 2006, Schlichting caused the contents of the file or folders referenced in paragraph 25, or a portion of said file or folders, to be transferred or transmitted in either electronic or paper form to another location and/or media.

27.    That the folder "Misc" which once resided at "C:\Misc" on Schlichting's Heartbilt computer contained Heartbilt business-related files, including, but not limited to, at least two Microsoft Excel files containing Heartbilt business-related information.

28. That on or after January 30, 2006, but prior to February 11, 2006, Schlichting caused the contents of the file or folders referenced in the above paragraph 27, or a portion of said file or folders, to be transferred or transmitted in either electronic or paper form to another location and/or media.

29. That on February 3, 2006, after files were deleted from Schlichting's Heartbilt computer by Schlichting, he executed or caused to be executed on the Dell computer a program entitled "Disk Defragmenter".

30. That on February 3, 2006, after files were deleted from Schlichting's Heartbilt computer by Schlichting, he executed or caused to be executed on the Dell computer a Microsoft program entitled "Disk Cleanup Utility Program".

31. That on February 9, 2006, Schlichting executed or caused to be executed on the Dell computer a program entitled "Disk Defragmenter".

32. That starting on February 2, 2006 at 4:03 p.m., and continuing through his final day of employment at Heartbilt on February 10, 2006, Schlichting caused to print approximately 145 pages of Heartbilt business-related documents, including, but not limited to, Microsoft Word and Microsoft Excel documents, and that Schlichting thereafter took possession of said documents or provided said documents to others.

33. That through Schlichting's Heartbilt computer, he accessed other computer hard drives within the Heartbilt computer network, in addition to the Heartbilt network server and the Dell computer.

34. That from at least January 30, 2006 through February 10, 2006, Schlichting maintained a folder in the Dell computer named "Misc" at the following path: C:\Documents and

Settings\MSchlichting\Desktop\Misc.

35.    That the "Misc" folder referenced in paragraph 34 was kept by Schlichting locally on the Dell computer and was not backed up by the Heartbilt computer network server.

36.    That on or about January 31, 2006, Schlichting deleted from the Dell computer an Excel file named "LOG HOME Calc Update.xls".

37.    That Schlichting caused the file data or a portion thereof in paragraph 36, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

38.    That on or about January 31, 2006, Schlichting deleted from the Dell computer an Excel file named "LOG HOME CALC Werth 11.30.05.xls".

39.    That Schlichting caused the file data or a portion thereof referenced in paragraph 38, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

40.    That on or about January 31, 2006, Schlichting deleted from the Dell computer an Excel file named "LOG HOME CALC.NEW.xls".

41.    That Schlichting caused the file data or a portion thereof referenced in paragraph 40, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

42.    That on or about January 30, 2006, Schlichting deleted from the Dell computer an Excel file named "LOG HOME CALC Werth 12.3.05.xls".

43.    That Schlichting caused the file data or a portion thereof referenced in paragraph 42, to be transferred, printed or otherwise reside in electronic or printed form in any other

location other than the Dell computer.

44.    That on or about January 31, 2006, Schlichting deleted from the Dell computer a Word file named "Lant Huntley Est.1.5.06.doc".

45.    That Schlichting caused the file data or a portion thereof referenced in paragraph 44, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

46.    That on or about January 31, 2006, Schlichting deleted from the Dell computer an Excel file named "CALCULATOR Hendrickson 1.16.06.xls".

47.    That Schlichting caused the file data or a portion thereof referenced in paragraph 46, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

48.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "CALCULATOR 2006.xls".

49.    That Schlichting caused the file data or a portion thereof referenced in paragraph 48, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

50.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "Mike's 2005 Sales & 6 Mos Prospects.xls".

51.    That Schlichting caused the file data or a portion thereof referenced in paragraph 50, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

52.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "File 06.xls".

53.    That Schlichting caused the file data or a portion thereof referenced in paragraph 52, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

54.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "LOG HOME CALC LaMee (Erie)11.23.05.xls".

55.    That Schlichting caused the file data or a portion thereof referenced in paragraph 54, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

56.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "LOG HOME CALC LaMee-Meadow 12.07.05.xls".

57.    That Schlichting caused the file data or a portion thereof referenced in paragraph 56, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

58.    That on or about February 3, 2006, Schlichting deleted from the Dell computer a Word file named "H LaMee-Meadowbrook Summary 12.21.05 doc".

59.    That Schlichting caused the file data or a portion thereof referenced in paragraph 58, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

60.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "Palemere 1.3.06.xls".

61.    That Schlichting caused the file data or a portion thereof referenced in paragraph 60, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

62.    That on or about February 3, 2006, Schlichting deleted from the Dell computer a Word file named "Palmere Plan Adjustments 1.12.06.doc".

63.    That Schlichting caused the file data or a portion thereof referenced in paragraph 62, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

64.    That on or about February 3, 2006, Schlichting deleted from the Dell computer a Word file named "Stierman Window Adjustments 1.12.06.doc".

65.    That Schlichting caused the file data or a portion thereof referenced in paragraph 64, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

66.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "T & J SMITH INT RM FIN SCHEDULE.xls".

67.    That Schlichting caused the file data or a portion thereof referenced in paragraph 66, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

68.    That on or about February 3, 2006, Schlichting deleted from the Dell computer an Excel file named "C:\Misc\LOG HOME CALC Sarillo 11.7.05.xls".

69.    That Schlichting caused the file data or a portion thereof referenced in paragraph 68, to be transferred, printed or otherwise reside in electronic or printed form in any other

location other than the Dell computer.

70.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME Ent #1.xls".

71.    That Schlichting caused the file data or a portion thereof referenced in paragraph 70, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

72.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME Lake Erie.xls".

73.    That Schlichting caused the file data or a portion thereof referenced in paragraph 72, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

74.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC Ent #1 (Mod Rim).xls".

75.    That Schlichting caused the file data or a portion thereof referenced in paragraph 74, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

76.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC Ent #2.xls".

77.    That Schlichting caused the file data or a portion thereof referenced in paragraph 76, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

78.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC Kodiak Cabin.xls".

79.    That Schlichting caused the file data or a portion thereof referenced in paragraph 78, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

80.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC School House.xls".

81.    That Schlichting caused the file data or a portion thereof referenced in paragraph 80, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

82.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC Meglio 11.01.05.xls".

83.    That Schlichting caused the file data or a portion thereof referenced in paragraph 82, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

84.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "CALCULATOR Lamee 12.19.05.xls".

85.    That Schlichting caused the file data or a portion thereof referenced in paragraph 84, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

86.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC Stierman 11.25.05.xls".

87.    That Schlichting caused the file data or a portion thereof referenced in paragraph 86, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

88.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC Munson 11.01.05.xls".

89.    That Schlichting caused the file data or a portion thereof referenced in paragraph 88, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

90.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "Green (Shell-Up) 1.17.06.xls".

91.    That Schlichting caused the file data or a portion thereof referenced in paragraph 90, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

92.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "CALCULATOR L. Huntley 1.5.06.xls".

93.    That Schlichting caused the file data or a portion thereof referenced in paragraph 92, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

94.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "CALCULATOR T.Smith 12.16.05.xls".

95.    That Schlichting caused the file data or a portion thereof referenced in paragraph 94, to be transferred, printed or otherwise reside in electronic or printed form in any other

location other than the Dell computer.

96.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC T&J Smith Garage 11.25.05.xls".

97.    That Schlichting caused the file data or a portion thereof referenced in paragraph 96, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

98.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "CALCULATOR T&J Smith 12.22.05.xls".

99.    That Schlichting the file data or a portion thereof referenced in paragraph 98, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

100.    That on or about February 3, 2006, Schlichting in the Dell computer an Excel file named "CALCULATOR Steve Norton 1.23.06.xls".

101.    That Schlichting caused the file data or a portion thereof referenced in paragraph 100, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

102.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "CALCULATOR BSA #4 12.31.05.xls".

103.    That Schlichting caused the file data or a portion thereof referenced in paragraph 102, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

104.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC BSA #3".

105.    That Schlichting caused the file data or a portion thereof referenced in paragraph 104, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

106.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC BSA Lodge 12.14.05".

107.    That Schlichting caused the file data or a portion thereof referenced in paragraph 106, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

108.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "CALCULATOR BSA Craft Bldg 1.30.06".

109.    That Schlichting caused the file data or a portion thereof referenced in paragraph 108, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

110.    That on or about February 3, 2006, Schlichting altered in the Dell computer an Excel file named "LOG HOME CALC Aquilera 11.16.05.xls".

111.    That Schlichting caused the file data or a portion thereof referenced in paragraph 110, to be transferred, printed or otherwise reside in electronic or printed form in any other location other than the Dell computer.

112.    That the actions by Schlichting as outlined in paragraphs 14 through 111 were intentional and exceeded his authority as a Heartbilt employee, and as a user of the Heartbilt

computer assigned to him, referred to herein as the Dell computer.

113.     That subsequent to the acts of computer deletion or transfer of files as alleged above, Schlichting accepted employment with, and began working for, a competing business of the plaintiff, known as Timbercut Log Homes & Décor, and on information and belief used the computer files and valuable information belonging to Heartbilt as alleged in paragraphs 14 through 111, in said competing business, to the detriment of Heartbilt.

114.     The defendant's acts of deletion, transfer and/or destruction as alleged in paragraphs 14 through 111 constitute violations of the Computer Fraud and Abuse Act, 18 U.S.C., §1030, *et seq.* and caused damage to the plaintiff in excess of the statutory requirement in Section 1030(a)(5)(B)(i).

115.     Plaintiff has suffered damages due to the plaintiff's wrongful conduct, and discovered the damages caused by Schlichting on and after February 2007 when it engaged a consulting forensic expert to analyze certain aspects of the Dell computer.

WHEREFORE, HEARTBILT HOMES, INC., an Illinois corporation, prays for judgment in its favor and against the defendant as the proofs may show, as follows:

A.     All damages recoverable under the Computer Fraud and Abuse Act, 18 U.S.C., §1030, *et seq.*

B.     An award of attorney's fees, costs and pre-judgment interest; and

C.     An award of such other and further relief, including but limited to equitable relief, as the Court deems appropriate.

## PLAINTIFF DEMANDS TRIAL BY JURY

HEARTBILT HOMES, INC., an Illinois corporation
Plaintiff
By WilliamsMcCarthy, LLP


By: _____
                    One of Its Attorneys


Marc C. Gravino, Esq.  (#6198531)
John J. Holevas, Esq.  (#6193167)
WilliamsMcCarthy, LLP
120 West State Street, Suite 400
P. O. Box 219
Rockford, IL  61105-0219
815-987-8900

## Employment Agreement

This employment agreement is being entered into by the undersigned employee with Heartbilt Homes, Inc., an Illinois corporation. The effective date of this agreement will begin with the 1st day of work by the employee under employment by Heartbilt Homes and shall be legally binding as to the content and time period as described herein.

Wages – Wages shall be paid to the employee every other Friday (or before at the discression of Heartbilt Homes) following the two week pay period preceding the scheduled Friday pay day. The wage rate shall be as per the attached, signed and dated wage agreement. Holidays, vacation and any other personal time will be paid at this agreed on base wage.

Commissions – Commissions on sales generated by the employee shall be paid on the second pay date of each month. Commissions paid to the employee shall be for gross sales (less any sales tax collected) collected during the prior month. In the event of termination of employment either by means of resignation or by dismissal, commissions due to the employee will be paid only on the amount collected from the customer as of the date of employment termination. The final commission payment to the employee shall be made on the second pay date of the following month of termination or earlier as directed by the President of Heartbilt Homes.

Employee Travel and Entertainment Expenses – Expenses incurred by the employee, which are pre-approved by Heartbilt Homes in writing or verbally, shall be reimbursed at lease monthly to the employee.

Vacation - Vacation shall be accrued during each year of service and used during the next 12 months. In the event of termination, only the unused vacation that was accrued fully from the prior year of service shall be paid to the employee with his/her last wage check.

Proprietary Information, Trade Secrets, Sales Leads – Any trade secrets, knowledge of financial information, customer lists, sales contacts and sales leads are the property of Heartbilt Homes. In the event of termination the past employee shall have no claim to and will not use any of this information to his/her gain or to Heartbilt Homes disadvantage.

Performance Review – Performance reviews hall be scheduled after the first 90 and 180 days of employment and every 180 days thereafter. A written summary of each of these reviews shall be signed by both the employer and the employee and shall become a part of the employee's permanent employment file.



EXHIBIT

*A*

Employment Agreement (Continued)

<u>Termination of Employment</u> – In the event of voluntary termination, the employee shall provide in writing a resignation giving at least two weeks notice of the last day of employment. In the event of termination by the employer, if the termination is made "with cause" the effective date of termination shall be at the discression of the employer. If the termination is made without cause, the employer shall provide a two-week notice or payment in kind.

Heartbilt Homes _____    Date _____

Employee _____    Date _____

## Heartbilt Homes Inc.

### Electronic Access & Acceptable Use Policy

**1.0 General**

Heartbilt Homes Inc. provides some, if not all, employees with electronic access, consisting of an email system, a network connection, network storage, and Internet access. This policy governs all use of the Company's network, Internet access, and email system at all Heartbilt locations and offices.

**2.0 Email Policies and Procedures**

Heartbilt Homes Inc. email system is designed to improve service to our customers.

- Heartbilt Homes Inc. email system, network, and Internet access are intended for business use only.
- *All information created, sent, or received via Heartbilt Homes Inc. email system, network, Internet, including all email messages and electronic files, is the property of Heartbilt Homes Inc. Employees have no expectation of privacy regarding this information. Heartbilt Homes Inc. reserves the right to access, read, review, monitor, copy all messages and files on its computer system at any time and without notice. When deemed necessary, Heartbilt Homes Inc. reserves the right to disclose text or images to law enforcement agencies or other third parties without the employee's consent.

* Initials: 

**2.1 Email Guidelines**

- Use extreme caution to ensure that the correct e-mail address is used for the intended recipient(s).
- Any message or file sent via email must have the employee's name attached.
- Any message or file sent via email must have Heartbilt Homes Inc. intended recipient disclaimer attached.
- Personal email accounts are not permitted.
- Alternate Internet Service Provider connections to Heartbilt Homes Inc. internal network are not permitted.
- Confidential information should not be sent via email. This includes the transmission of customer financial information, Social Security numbers, employee health records, and other confidential material.
- Only authorized management personnel are permitted to access another person's email without consent.
- Employees should exercise sound judgment when distributing messages. Client-related messages should be carefully guarded and protected. Employees must also abide copyright laws, ethic rules, and other applicable laws.
- Email messages must contain professional and appropriate language at all times. Employees are prohibited from sending abusive, harassing, intimidating, threatening, and discriminatory messages including offensive comments about race, gender, hair color, disabilities, age, sexual orientation, pornography, religious beliefs and practice, political beliefs, or national origin via email. Sending abusive, harassing, intimidating, threatening, and discriminatory or otherwise offensive messages via email will result in disciplinary action up to and including termination.

HB 00099



EXHIBIT
B

- All email attachments must be scanned before being opened. All executable attachments must be deleted without being opened. When in doubt of the origin of the attachment always delete.
- Use of Heartbilt Homes Inc. email system to solicit for any purpose, personal or otherwise, without the consent of Heartbilt Homes Inc. is strictly prohibited.
- Chain messages and executable graphics and/or programs should be deleted. Any employee engaging in the transmission of inappropriate emails, as determined by management, will be subject to disciplinary action, up to and including termination.
- Junk email should not be opened and must be deleted immediately. If in doubt of the sender delete the email.
- Instant messaging is not allowed.
- Employees should archive all messages. All messages should be kept for a period of one year after the date of last correspondence.
- All messages in Heartbilt Homes Inc. email system shall be deemed Heartbilt property, as is all information on Heartbilt Homes Inc. systems.

Violation of any of these policies will subject an employee to disciplinary action, up to and including termination.

**Network & Internet Policy**
Heartbilt Homes Inc. Internet and network system access are intended for Heartbilt Homes Inc. business-use only. All information created, sent, or received on this system is the property of Heartbilt Homes Inc.
**3.0 Personal Responsibility**
By accepting an account password, related information, and accessing Heartbilt Homes Inc. Network and Internet system, an employee agrees to adhere to Heartbilt Homes Inc. policies regarding their use. You also agree to report any misuse or policy violation(s) to you supervisor.
**3.1 Permitted Use and Term**
Use of the Network and the Internet is a privilege, not a right. Use of Network and Internet access extends throughout an employee's term of employment, providing the employee does not violate Heartbilt Homes Inc. policies regarding Network and Internet use.
**3.2 Availability and Access**
Heartbilt Homes Inc. reserves the right to suspend access at any time, without notice, for technical reasons, possible policy violations, security, or other concerns.
3.4 Content & Communications
Heartbilt Homes Inc., at its sole discretion, will determine what materials, files, information, software, communications, and other content and/or activity will be permitted or prohibited.
**3.3 Privacy**
\* Network and Internet access is provided as a tool for our organization's business. Heartbilt Homes Inc. reserves the right to monitor, inspect, copy, review, and store at any time, without prior notice, any and all usage of the Network and the Internet, as well as any and all materials, files, information, software, communications, and other content transmitted, received or stored in connection with this usage. All such information, content, and files are the property of Heartbilt Homes Inc. An employee should have no expectation of privacy regarding them. Network administrators may review file and intercept communications for any reason, including but not limited to maintaining system integrity and ensuring employees are using the system consistently with this policy.

\* Initials _____

**3.4 Downloaded Files**

Files a not to be downloaded from the Internet without the prior authorization of management. Any files authorized for download from the Internet must be scanned with virus detection software before being opened. Employees are reminded that information is not always reliable and should be verified for accuracy before use.

**3.5 Confidential Information**

Employees may have access to confidential information about other employees, clients, and Heartbilt Homes Inc. All information created, sent, or received on Heartbilt Homes Inc. Network is the property of Heartbilt Homes Inc. For the purpose of this policy, confidential information includes, but is not limited to:

- Procedures for computer access and passwords of Heartbilt Homes Inc. clients and customers, program manuals, user manuals, or other documentation, run books, screen, file, of database layouts, system flowcharts, and all documentation normally related to the design or implementation of any computer programs developed by for Heartbilt Homes Inc. relating to computer programs or systems installed either for customers, or for internal use;
- Lists of present clients, customers, manufactures, and suppliers.
- Lists of or information about personnel seeking employment with or who are employed by Heartbilt Homes Inc;
- Prospect lists for actual or potential clients and customers of Heartbilt Homes Inc. and contact persons at such actual or potential clients and customers;
- Any other information relating to Heartbilt Homes Inc. research, development, inventions, purchasing, engineering, marketing, merchandising, and selling.

**3.6 Prohibited Activities**

Employees are prohibited from using Heartbilt Homes Inc. email system, network, or Internet access for the following activities:

- Downloading software without the prior written approval of your supervisor.
- Printing or distributing copyrighted materials. This includes, but is not limited to, software, articles and graphics protected by copyright.
- Using software that is not licensed by the manufacturer or approved by Heartbilt Homes Inc.
- Sending, printing, or otherwise disseminating Heartbilt Homes Inc. proprietary data, or any other information deemed confidential by Heartbilt Homes Inc., to unauthorized persons.
- Operating a business, soliciting money for personal gain or otherwise engaging in commercial activity outside the scope of employment.
- Searching for outside employment
- Making offensive or harassing statements based on race, color, religion, national origin, veteran status, ancestry, disability, age, sex, or sexual orientation.
- Sending of forwarding messages containing defamatory, obscene, offensive, or harassing statements. An employee should notify their supervisor immediately upon receiving such a message. This type of message must not be forwarded.
- Sending or forwarding a message that discloses personal information. This also include accessing, transmitting, receiving, or seeking confidential information about clients or fellow employees.
- Sending ethnic, sexual-preference or gender-related slurs and/or jokes via email.
- Attempting to access or visit sites featuring pornography, terrorism, espionage, theft, or drugs.
- Sending or soliciting sexually orientated messages or images.

- Gambling or engaging in any other criminal activity in violation of local, state, or federal law.
- Engaging in unethical activities or content.
- Participating in activities, including the preparation or dissemination of content, which could damage Heartbilt Homes Inc. professional image, reputation and/or financial stability.
- Permitting or granting use of an email or system account to another employee or person outside Heartbilt Homes Inc. Permitting another person to use an account or password to access the Network or the Internet, including, but not limited to, someone whose access has been denied or terminated, is a violation of this policy.
- Using another employee's password or impersonating another person while communicating or accessing the Network or Internet.
- Introducing a virus, harmful component, corrupted data or malicious tampering with any of Heartbilt Homes Inc. computer systems.

### 3.7 Computer Equipment

The following policies are designed to reduce repair costs, maintain the integrity of our system and protect Heartbilt Homes Inc. assets. Employees should adhere to the following:

- Do not keep liquids or magnets on or near the computer.
- Do not remove any computer from the building.

### 3.8 Compliance

- Each individual is responsible for his/her own actions.
- Question about compliance should be brought to supervisor's attention.
- Any employee aware of a policy violation should immediately report the violation their supervisor.

### 3.9 Noncompliance

- Employees who violate this policy and/or use Heartbilt Homes Inc. email system, network, and Internet access for improper purposes will be subject to disciplinary action, up to and including termination.

### 4.0 Software Usage Policies and Procedures

Software piracy is both a crime and a violation of Heartbilt Homes Inc. Usage Policy.

Employees are to use software strictly in accordance with its license agreement. Unless otherwise provided in the license, the duplication of copyrighted software (except for backup and archival purposes by designated managerial personnel) is a violation of copyright law. In addition to being in violation of the law, unauthorized duplication of software is contrary to Heartbilt Homes Inc. standards of employee conduct.

To ensure compliance with software license agreements and Heartbilt Homes Inc. Software Usage Policy, employees must adhere to the following:

- Employees must use software in accordance with the manufacturer's license agreements and Heartbilt Homes Inc. Software Usage Policy. Heartbilt Homes Inc. licenses the use of computer software from a variety of outside companies. Heartbilt Homes Inc. does not own the copyright to software licensed from other companies. Employees acknowledge they do not own software or its related documentation.
- Heartbilt Homes Inc. does not condone and prohibits the unauthorized duplication of software. Employees illegally reproducing software will be subject disciplinary action. In addition, employees illegally reproducing software may be subject to civil and criminal penalties including fines and imprisonment.

- Any employee who knowingly makes, acquires, or uses unauthorized copies of computer software licensed to Heartbilt Homes Inc., or who places or uses unauthorized software Heartbilt Homes Inc. premises or equipment shall be subject to disciplinary action, up to and including termination.
- Employees are not permitted to install their personal software onto Heartbilt Homes Inc. computer system. Employees are not permitted to copy software from Heartbilt Homes Inc. computer system for the installation on home or other computers.
- Employees are prohibited from giving software or fonts to clients, customers, vendors, and other persons not employed by Heartbilt Homes Inc. Under no circumstances will Heartbilt Homes Inc. use software from an unauthorized source, including, but not limited to, the Internet, home, friends, and/or colleagues.
- Employees who suspect or become aware of software misuse are required to notify their supervisor.
- All software used on Heartbilt Homes Inc. owned computers will be purchased through the appropriate procedures.

## 5.0 Password Policy and Procedure

Passwords are an important aspect of computer security. They are the front line of protection for user accounts. A poorly chosen password may result in a compromise of Heartbilt Homes Inc. entire corporate network. As such, all Heartbilt Homes Inc. employees are responsible for taking the appropriate steps, as outlined below, to select and secure their passwords.

### 5.1 General Password Policy

- All user level passwords must be changed every six months.
- All passwords must meet complexity requirements.
- All passwords are to kept confidential.
- *Employee assumes all responsibility for his/her password.

* Initials _____

### 5.2 General Password Construction Guidelines

Password construction is very important to security of the network. All employees should select a strong password.

Poor, weak passwords have the following characteristics:

- The password contains less than seven characters.
- The password is found in the dictionary.
- The password is a common usage word such as:
    o Names of family, pets, friends, co-workers, fantasy characters, etc.
    o Computer terms and names, commands, sites, companies, hardware, software.
    o Birthdays and other personal information such as addresses and phone numbers.

Strong passwords have the following characteristics:

- Must contain both upper and lower case characters (e.g., a-z, A-Z)
- Must contain digits and punctuation characters as well as letters e.g., 0-9, !@#$%^&
- Must be seven characters, one numeral, and one symbol.
- Are not based on personal information, pets, names of family, ect.

### 5.3 Password Protection Standards

Do not use the same password for Heartbilt Homes Inc. accounts as for other non-Heartbilt accounts. Do not share Heartbilt Homes Inc. passwords with anyone, including administrative assistants or secretaries. All password are to be treated as sensitive, Confidential Heartbilt Homes Inc. information.

HB 00103

Here is a list of "don'ts":

- Don't reveal a password over the phone to ANYONE!
- Don't reveal a password in an email message.
- Don't reveal a password to the boss.
- Don't talk about the password in front of others.
- Don't hint at the format of a password (e.g., "my family name").
- Don't reveal a password on questionnaires or security forms.
- Don't share password with family members.
- Don't reveal a password to co-workers while on vacation.

If someone demands a password, refer them to this document or have them call your supervisor. Do not write passwords down and store them anywhere in your office. Do not store passwords in any computer.

**5.4 Enforcement**

Any employee found to have violated this policy may be subject to disciplinary action, up to and including termination of employment.

**6.0 Electronic Access Policy**

**Acknowledgement of Receipt and Understanding**

I hereby certify that I have and fully understand the contents of the Electronic Access Policy. Furthermore, I have been given the opportunity to discuss any information contained therein or any concerns that I may have. I understand that my employment and continued employment is based upon my willingness to abide by and follow Heartbilt Homes Inc. policies, rules, regulations, and procedures. I acknowledge that Heartbilt Homes Inc. reserves the right to modify or amend its policies at any time, without prior notice. These policies do not create any promises or contractual obligations between Heartbilt Homes Inc. and its employees. My signature below certifies my knowledge, acceptance, and adherence to Heartbilt Homes Inc. policies, rules, regulations, and procedures regarding electronic access



| | |
|---|---|
| Employee Signature | Dennis Hansen |
| | Supervisor |
| Print Name | Dennis Hansen |
| | Print Name |
| Date | Date |